FILED
2026 Apr-28  PM 08:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# HEALTH SERVICES AGREEMENT

THIS AGREEMENT by and between Mark L.Pettway, in his official capacity as Sheriff of Jefferson County, Alabama (hereinafter referred to as the "Sheriff") and SymboCor, LLC, an Alabama limited liability company (hereinafter referred to as "SymboCor"), effective as of 12:00 a.m. on September 1, 2023, and shall continue for a period of three (3) years until 11:59 p.m. on August 31, 2026, with an option to extend for two (2) additional one-year periods, in accordance with Article 8.1.

WHEREAS, the Sheriff operates the Jefferson County Jails located at 809 Richard Arrington Jr., Boulevard. North Birmingham, Alabama 35203, (hereinafter referred to as "BHM") and 1822 2nd Avenue North, Bessemer, Alabama 35020, (hereinafter referred to as "BES"), and any other prospective properties that may be substituted for housing of inmates in the future (hereinafter referred to collectively as "Facilities"); and

WHEREAS, the Sheriff has the obligation to provide professional and responsive healthcare service for the health, safety, and welfare of all inmates incarcerated at the Facilities; and

WHEREAS, the objective of the Sheriff is to provide for the delivery of quality health care to all inmates at the Facilities in accordance with all applicable laws; and

WHEREAS, the Sheriff issued Request for Proposal, RFP No. 23-01, Inmate Healthcare Services, which solicited proposals for the provision of inmate healthcare services at the Facilities (hereinafter referred to as "RFP") and  SymboCor submitted a responsible proposal in response to the RFP; and the Sheriff selected SymboCor's proposal for award of this Agreement; and

WHEREAS, SymboCor is a limited liability company  in the business of providing healthcare services and possesses all capabilities to provide correctional healthcare services due to SymboCor's management team's substantial experience in providing health care services to employees of self-insured employers and desires to provide such professional and responsive medical services, including mental health, dental and other related health care and administrative services for the inmates, including a program for preliminary screening of Inmates upon arrival at the Facilities, a comprehensive health evaluations of each inmate following admission at the Facilities, regularly scheduled sick call, nursing coverage, regular on-site physician visits, infirmarcy care, hospitalization services as described below, medical specialty services as described below, emergency medical services as described below, medical records management, pharmacy services, health education training services, dialysis services, quality assurance programs, administrative support services, and other services for the Sheriff under the terms and conditions hereof ("Services").

NOW, THEREFORE, in mutual consideration of the covenants and promises hereinafter made, the parties hereto agree as follows:

## ARTICLE 1: HEALTH CARE SERVICES

1.1      <u>General Engagement</u> The Sheriff hereby engages SymboCor to provide and to arrange to provide for the delivery of professional and up to date responsive evidence based medical Services to individuals under the custody and control of the Sheriff and incarcerated at the Facilities ("Inmate(s)"), and SymboCor hereby accepts such engagement according to the terms and provisions hereof.  In the provision of such Services, SymboCor agrees agrees to meet or exceed all constitutional standards of healthcare, and at a bare minimum to meet the minimum standards of the National Commission on Correctional Health Care (hereinafter referred to as the "NCCHC"). SymboCor shall use its best efforts in good faith to provide and deliver quality professional and responsive Services in excess of the minimum compliance consistently throughout the entire Agreement and/or upon termination pursuant to Article 8 herein.

1.2      <u>Scope of General Services</u>. SymboCor will provide on a regular basis professional and responsive medical, mental health, dental and other related health care and administrative Services for the Inmates, as more specifically described hereinafter and in SymboCor's Proposal dated May 10, 2023 and its Best and its Revised Adjusted Price dated May 24, 2023 (collectively hereinafter, "SymboCore Proposal") (attached hereto as Exhibti A and Exhibit B, respectfully).

1.3      <u>Standards</u>.  SymboCor shall provide the Services specified herein, which shall constitute reasonable health care Services in accordance with the, and greater than the minimum, standards and/or requirements promulgated by (i) the NCCHC, relating to healthcare services in jails: (ii) the American Correctional Association relating to health services (hereinafter referred to as the "ACA"), and any and all other applicable state and federal statutes, including any other applicable Order of a Court (hereinafter the "Standards").

1.4      <u>Incorporation of RFP and SymboCor Proposal</u>. Except as otherwise agreed herein, the Services to be provided by SymboCor under the terms of this Agreement shall be those submitted in the SymboCor Proposal. The RFP and SymboCor Proposal shall become a part of this Agreement.  A copy of the RFP is attached hereto as Exhibit A and incorporated herein by reference. A copy of the SymboCor Proposal is attached hereto collectively as Exhibit A and Exhibit B and incorporated herein by reference. The healthcare Services to be provided by SymboCor under this Agreement shall be delivered in accordance with Exhibit A and Exhibit B and all other exhibits attached hereto.

1.5      <u>Specialty Services</u>. In furtherance of the Services, SymboCor will also provide specialty services (e.g. x-ray services, dialysis services, and laboratory services) on-site to the extent clinically possible as set forth in Exhibit A and B.  To the extent specialty care is required and cannot be rendered on-site, SymboCor will make appropriate off-site arrangements for the rendering of such care. However, SymboCor shall not be financially responsible for the costs of such off-site specialty services. These costs, less all usual and customary discounts from off-site medical providers, shall be processed as a pass through service to the Sheriff for reimbursement to SymboCor. If the Sheriff disputes whether SymboCor actually paid for such service, such dispute shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

1.6      <u>Emergency Services</u>. SymboCor will  provide emergency medical

response to Inmates, visitors, and Facility staff as necessary and appropriate on-site in accordance with any and all applicable Services and Standards. This responsibility extends only to the immediate response and readying the person for emergency transport. SymboCor shall arrange for the provision of ambulance services and off-site emergency medical care for Inmates. However, SymboCor shall not be financially responsible for the costs of ambulance services or emergency services. These costs, less all usual and customary discounts from off-site medical providers, shall be processed as a pass through service to the Sheriff for reimbursement to SymboCor. If the Sheriff disputes whether SymboCor actually paid for such services, such dispute shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

1.7    Hospitalization Services. SymboCor will arrange for the admission of any Inmate, who in the opinion of the treating physician requires hospitalization. These costs, less all usual and customary discounts from medical providers, shall be processed as a pass through service to the Sheriff for reimbursement to SymboCor. SymboCor will make a good faith effort to ensure that Inmates admitted to hospital are returned to the jail as soon as it is clinically safe to do so. If the Sheriff disputes whether SymboCor actually paid for such services, such dispute shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

1.8    Pharmaceutical Services. Subject to the exception set forth below and reasonable availability, SymboCor shall be responsible for providing all prescription and non-prescription medications as well as intravenous solutions that are currently FDA approved in accordance with all local, state, and federal rules, regulations, and laws. Regular prescriptions will be provided within twenty-four (24) hours of the original physician's order, unless specified otherwise by the physician's order. SymboCor will keep a supply of critical medications on-site to treat conditions such as cardiac disease, hypertension, seizure disorders, as well as antibiotics for infection. For purposes hereof, "critical medications" refer to those medicines regularly used or contemplated to be used by SymboCor in day-to-day discharge of the Services and such other medicines and supplies contemplated or needed to be available for the discharge of the Services. SymboCor will supply the following medications and bill the Sheriff back for said medications at its costs, less all usual and customary discounts from medical providers: HIV/AIDS medications, TB related medications, blood factor medications, and Hepatitis C medications. If the Sheriff disputes whether SymboCor actually paid for such services, such dispute shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

1.9    Brand Name Medications. Sherrif shall reimburse SymboCor the cost of all name brand medicines purchased pursuant to the Services, but SymboCor shall use reasonable efforts to use generic medicines.

1.10    Lab Service. Sheriff shall reimburse CymboCor the cost of all lab work not included on the formulary.

Dialysis Services. SymboCor shall provide the equipment and personnel necessary to provide dialysis services at BHM as set forth in the SymboCor Proposal. The supplies and medications necessary for patient treatment will be purchased by SymboCor and reimbursed to SymboCor at cost with no mark-up in accordance with the monthly invoice provisions herein. If the Sheriff disputes whether SymboCor incurred any costs, such dispute shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

1.11    Off-site Claims. Sheriff shall shall maintain financial responsibility for off-site services rendered to Inmates during the term of this Agreement. However, SymboCor will provide payment to any off-site provider and seek reimbursement from Sheriff on a monthly basis for any and all costs and expenses less all usual and customary discounts from medical providers, related to off-site services rendered to an Inmate. Additionally, SymboCor will provide all necessary and customary utilization management and provide Sheriff with a bi-weekly report summarizing off-site services rendered to Inmates including, but not limited to names, addresses, phone numbers and contact information of where off-site services were provided for Inmates. . If the Sheriff disputes whether SymboCor incurred any costs pursuant to this paragraph,such dispute shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

1.12    Exceptions to Treatment. In addition to other provisions excluded pursuant to this Agreement, SymboCor will not be responsible for any medical testing or obtaining samples which are forensic in nature, except as required by local, state, or federal statute or regulation or by Court Order. Revisions of applicable statute or regulation pertaining to medical testing or obtaining samples, which are forensic in nature, which occur during the term of this Agreement, will be considered a further obligation of SymboCor; however, if such revisions result in increased cost to SymboCor, the parties agree to discuss same and reimbursement to SymboCor. SymboCor will not be responsible for costs associated with the transportation of inmates for off-site non-emergency health care treatment. SymboCor will not be financially responsible for costs associated with transplants and/or experimental procedures. SymboCor will not be financially responsible for any Inmate that is not physically booked into the Facilities nor for any costs incurred after an inmate is released from Sheriff's custody. SymboCor will not be responsible for the provision of elective medical care to inmates. SymboCor will not be responsible, financially or otherwise, for providing health care services to an infant following birth. SymboCor shall provide access to abortion services consistent will all applicable federal, state and local laws, but shall not be responsible for providing payment to any off-site provider for abortion services rendered to an Inmate that directly relates to an abortion. In the event payment is necessary for such abortion services, Sheriff shall provide payment directly to the provider. Notwithstanding the forgoing, Sheriff shall have sole discretion in deciding where off-site abortion services are performed. If the Sheriff disputes whether SymboCor incurred any costs pursuant to this paragraph, such dispute shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

1.13    Change in Standard of Care or Scope of Services. The compensation in Article 9 below reflects the payment for Services as finally agreed upon by the parties to this Agreement. The initial anticipated staffing is described in Exhibit C ("Staffing Summary"). Following the initial ninety (90) day term of this Agreement, the parties agree to meet and confer and evaluate the staffing personnel utilized to provide Services pursuant to this Agreement and associated pricing and contract terms and determine whether contractual modifications are appropriate. Additionally, should any new treatments, community standards of care, drug classes or diagnostic tests be mandated by community health care standards, or should Sheriff request a change in the scope of Services, and SymboCor's complying with these changes results in an increase in cost to SymboCor, coverage of costs related to such changes are not covered in this Agreement and the parties agree to negotiate the price of any increased cost. Furthermore, should the average daily population ("ADP") within the Facilities increase or decrease by more than 20% on average for a sustained period of more than ninety (90) days, the parties agree to meet and

*mgm*

confer to mutually negotiate any necessary contractual modifications.  Prior to such negotiation, SymboCor agrees to provide the Sheriff information sufficient to evaluate the scope and necessity of and any increase in cost. Any disputed costs under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

### ARTICLE 2: PERSONNEL

2.1        Incorporation of SymboCor Proposal.  SymboCor will provide medical, mental health, dental, technical and support personnel necessary for the rendering of the Services to inmates as contemplated herein. The health care staff will be at levels consistent with those identified in SymboCor's Proposal. SymboCor will make payroll records and time records available to the Sheriff at any time, upon request, to enable the Sheriff to audit compliance with the staffing compliance as set forth in the SymbaCor Proposal.

2.2        Sheriff's Policies, Procedures and Protocols. SymboCor personnel will operate within the requirements of the Sheriff's Policies.

2.3        Provision of Personnel. SymboCor shall provide medical, dental, mental health, nursing, technical and support personnel as necessary for the rendering of the Services to inmates at the Facilities as described in the SymboCor Proposal, and as further required by this Agreement.

A. This staffing requirements as set forth in the SymboCor Proposal shall be required under this Agreement. Should the Sheriff add new Facilities or Services to those covered under this Agreement which result in staffing cost increases to SymboCor, SymboCor may seek compensation adjustment from the Sheriff, which shall not be unreasonably withheld. Any disputed costs under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

B. SymboCor shall retain as many current health care personnel working at the Facilities as practicable to remain on the job and to help maintain continuity and consistency of the Services required by this Agreement. The Sheriff shall allow SymboCor to conduct on-site interviews as necessary.

C. The parties agree to the staffing requirements as set forth in the SymboCor Proposal. SymboCor will credit Sheriff for the cost of staffing hours not provided due to any vacant health staff positions as set forth further herein below. SymboCor will also conduct a monthly analysis of its payroll records in order to ensure compliance with meeting the staffing obligations required by this Agreement and the staffing requirements set forth in the SymboCor Proposal. To fulfill its staffing obligations, SymboCor may utilize pro re nata (PRN) staffing and/or a current staff member(s) (staffing agency nurses will not be utilized), to include use of overtime staffing to fulfill the needs of any vacant position or any position that is temporarily vacant and will outline same within a monthly staffing report provided to Sheriff. In the event a current staff member is utilized to fill the scheduled hours of another staff member, SymboCor may utilize a like-kind or higher level staff member to fulfill the vacant staff position and this provision shall allow for

SymboCor to modify the required staffing requirement hours by substituting up to 1.00 FTE of required Medical Doctor/Physician/Psychiatrist time with up to 2.00 FTE additional NP/PA or Psych NP/PA time. Two hours of total services rendered by the NP/PA or Psych NP/PA shall be considered equivalent to one hour of service rendered by a Medical Doctor/Physician/Psychiatrist. A paid hour by SymboCor for staffing is hereby defined by the parties as an hour paid to a staff member, including any overtime, to fill hours set forth in the Agreement and the staffing requirements in the SymboCor Proposal, which shall include hours worked onsite, telemedicine/tele-psych hours, supplementing on-site staff, PTO, training/orientation, and holiday hours. In the event the staffing obligation is not met, SymboCor will credit the Sheriff on the following month's invoice in the amount of the insufficient hours at the applicable hourly rate for each hour a staffing member position remains unfilled for the month in question. The parties agree that any staffing credit(s) owed by SymboCor will be accounted for based on an aggregated paid hours amount which shall be conducted during SymboCor's monthly staffing report, and shall be paid to the Sheriff the month following the month in which any staffing shortfall occurred. At the end of each calendar month, SymboCor shall report to the Sheriff the number of hours paid to SymboCor's personnel for each position and shift aggregated on a monthly basis. Any disputed costs under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

2.4     Licensure. Certification and Registration of Personnel. SymboCor ensures that all personnel provided or made available by SymboCor to render Services hereunder shall be licensed, certified or registered, as appropriate, in their respective areas of expertise as required by applicable laws of the State of Alabama, and in compliance with any federal laws or protocols established by an agency of the State of Alabama or protocols established by a federal agency related to the Services provided under the Agreement. If requested by the Sheriff, SymboCor shall provide to the appropriate, designated officer or department a copy of the license, certificate or registration of personnel employed or contracted by SymboCor.

2.5     Sheriff's Satisfaction with HealthCare Personnel. If If Sheriff should become dissatisfied with any health care personnel provided by SymboCor, Sheriff will give written notice to SymboCor of its reasons for dissatisfaction, except as noted in Article 2.4(A), below. SymboCor agrees to cooperate with the Sheriff and respond to inquiries or complaints about its personnel, including lack thereof, or contractors in a timely manner, should the Sheriff have security or other concerns about SymboCor's employees' and/or contractors' fitness or ability to perform at the Facilities. SymboCor will exercise its best efforts to resolve the problem or other concerns, including lack of personnel. If the problem involving fitness or ability is not resolved, SymboCor will remove the individual according to SymboCor's personnel policy or independent contractor agreement.

(A)     All SymboCor personnel, subcontractors, and agents shall meet minimum standards as determined by the Sheriff in Sheriff's sole and absolute discretion prior to receiving a security clearance to enter the Facilities. If, at any time during the course of their employment or contract engagement, any SymboCor employee or subcontractor engages in conduct (either on or off duty) which threatens the security of the Facilities or would otherwise render that person ineligible for a security clearance, notwithstanding any other provision of this Agreement, Sheriff reserves the right in

Sheriff's sole and absolute discretion to withdraw that person's security clearance and shall immediately notify SymboCor. Sheriff has the sole and absolute discretion to restrain any person from access and being present at the Facilities.

(B)     Initial and continued assignment of staff and subcontractors by SymboCor shall be subject to written approval of the Sheriff. All persons employed by SymboCor or its subcontractors shall not be deemed to be the employees of Sheriff by reason of any provision of this Agreement.

(C)     SymboCor shall continuously maintain personnel files (or copies thereof) of all employees assigned to the Facilities. These personnel files shall be retained by SymboCor throughout the entirety of the Agreement and for three (3) years following termination of the Agreement.

2.6     Use of Inmates in the Provicion of Health Care Services. Inmates will not be employed or otherwise engaged in the direct rendering of any Services.

2.7     Subcontracting and Delegation. In order to satisfy its obligations hereunder, SymboCor may engage certain health care professionals as independent contractors rather than as employees. and Sheriff expressly consents to such subcontracting or delegation within the limits specified in Article 2.4(A) above. As the relationship between SymboCor and these health care professionals will be that of independent contractor, SymboCor will not be considered or deemed to be engaged in the practice of medicine or other profession's practiced by these professionals. and SymboCor will not exercise control over the manner or means by which these independent contractors perform their professional duties. However, these professional independent contractors shall provide professional insurance as required and specified in Article 10 of this Agreement. SymboCor shall provide a copy, including certificate of insurance, to the Sheriff upon any such subcontracting or delegation or upon further request by the Sheriff. Further, any actions/omissions of these independent contractors are still subject to indemnification by SymboCor as described in Article 10.3 herein.

2.8     Discrimination. During the performance of this Agreement, SymboCor, their employees, agents, subcontractors, and assignees agree as follows:

(A)     No one will discriminate against any employee or applicant for employment because of race, religion, color, sex or national origin, except where religion, sex or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of the contractor. Each will agree to post in conspicuous places, available to employees and applicants for employment, notices setting forth the provisions of this nondiscrimination clause.

(B)     All solicitations or advertisements for employees will state that SymboCor is an equal opportunity employer.

(C)     Notices, advertisements and solicitations placed in accordance with all federal and state laws, rules or regulations shall be deemed sufficient for the purpose of meeting the requirements of this Article.

## ARTICLE 3: ACCREDITATION

3.1        Use of Accreditation Standards. SymboCor agrees to operate and maintain healthcare systems at the Facilities and deliver Services contracted for at the Facilities that meet the accreditation Standards of the NCCHC and relevant Standards of the ACA.

3.2        NCCHC Accreditation. In the event the Sheriff pursues NCCHC accreditation of the Facilities, SymboCor agrees to support and actively participate in the Sheriff's pursuit of such accreditation.

3.3        ACA Accreditation. In the event the Sheriff pursues ACA accreditation of the Facilities, SymboCor agrees to affirmatively support and actively participate in the Sheriff's pursuit of such accreditation with respect to the ACA medical services standards.

## ARTICLE 4: EDUCATION AND TRAINING

4.1        Inmate and Staff Health Education. SymboCor will conduct ongoing healthcare education and training programs for Inmates and correctional officers at the Facilities toward the objective of raising the level of Inmate health and healthcare. These healthcare education and training programs will include, at the Sheriffs request, programs in first aid, signs and symptoms of chemical dependency, reactions to medical emergencies, a mental health/suicide prevention program, contagious diseases and any other programs identified by the Facilities or the Sheriff related to the Services and infrastructure within the Facilities.

4.2        Copies of Educational/Training Materials. SymboCor shall produce to Sheriff one copy of any materials distributed or used in connection with the ongoing healthcare education and training programs in Article 4.1. These materials, whether hard copy or electronic, shall include any written documentation, videos, recordings or any other relevant materials distributed in the course of the healthcare education and training programs. If these materials are lost or stolen, SymboCor shall provide the Sheriff another copy free of charge. These materials are only to be viewed by Facilities' staff and are not to be reproduced without the prior written consent of SymboCor.

## ARTICLE 5: REPORTS AND RECORDS

5.1        Medical Records. SymboCor will cause to be maintained a comprehensive, accurate medical record for each inmate who has received health care Services. This medical record will be maintained pursuant to all applicable federal, state and local law and will be kept separate from the inmate's confinement record. A summary of the applicable medical record will be available to accompany any inmate who is transferred from the Facilities to another location for off-site services or who is committed permanently or temporarily to another correctional facility. Medical records will be kept confidential, and SymboCor will follow the Sheriffs policy with regard to access by inmates and Facilities' staff to medical records, subject to applicable federal, state and local law regarding confidentiality of such records. To the extent SymboCor is required to produce any medical record to a third party, said production may be completed via a secured HIPAA compliant electronic means. Any costs associated with said

production by SymboCor to a third-party shall be submitted to Sheriff for reimbursement of same. Any disputed costs under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement. No information contained in the medical records will be released by SymboCor except as provided by the Sheriff's policy, by a court order, or otherwise in accordance with applicable law. Inmate medical records are and will remain the property of the Sheriff.

5.2     Electronic Medical Records. SymboCor will implement the keeping of inmate medical records in electronic format using CorrecTek. This electronic medical record system will be fully functional no later than day one. SymboCor shall maintain these record throughout the entire Agreement and three (3) years following termination of the Agreement. At the termination or expiration of this Agreement, SymboCor shall remove the software. All inmate medical information contained by the software should be provided to the Sheriff in some media format, in paper and/or electronic format, as approved by the Sheriff and acceptable to the Sheriff's new provider, not to be unreasonably withheld by SymboCor. Notwithstanding the forgoing, SymboCor shall turn over these inmate medical records to Sheriff upon termination of the Agreement. Any disputes under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement

5.3     HIPAA and HITECH Compliance. The parties shall comply with all requirements of the Federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the Federal Health Information and Technology for Economic and Clinical Health Act (HITECH Act) as applicable, which relate to the parties' responsibilities under this Agreement.

5.4     Regular Reports by SymboCor to the Sheriff. SymboCor shall provide to the Sheriff, on a date and in a form mutually acceptable to SymboCor and the Sheriff, daily, monthly and annual reports relating to care and Services rendered under this Agreement. Such reports shall be submitted on a regular, periodic, or on an as requested basis, to be determined by the mutual agreement of SymboCor and the Sheriff. Any disputed reports of the form of the reports under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

5.5     Inmate Information. Subject to all applicable federal and state laws, in order to assist SymboCor in providing the best possible health care services to inmates, the Sheriff will provide SymboCor with information pertaining to inmates that SymboCor and the Sheriff mutually identify as reasonable and necessary for SymboCor to adequately perform its obligations hereunder, which shall include allowing SymboCor access to the Facilities' inmate information management system as it relates to pertinent information that may assist SymboCor in rendering Services to inmates housed within the Facilities.

5.6     Records Available to the Sheriff with Limitations on Disclosure. Subject to Article 5.1 and 5.3, SymboCor shall make available to the Sheriff, at the Sheriff's request and at no cost, all records, documents and other papers relating to the direct delivery of Services to inmates hereunder if the delivery of Services to an inmate that is an issue in any claim or litigation by or against the Sheriff, SymboCor, or their agents, contractors, or employees. The Sheriff understands that many of the systems, methods, procedures, written materials, computer programs and other controls employed by SymboCor in the performance of its obligations hereunder are proprietary in

*mgm*

nature and will remain the property of SymboCor. During the term of this Agreement and after its termination, information and/or documentation concerning *this* proprietary material may not be used, distributed, copied, or otherwise utilized by the Sheriff except as required by law. Any dispute under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

5.7     Sheriff's Records Available to SymboCor with Limitations on Disclosure. During the term of this Agreement, and for a reasonable time thereafter, the Sheriff will provide SymboCor, at SymboCor's request, the Sheriff's records relating to the provision of Services to inmates as may be reasonably requested by SymboCor or as are pertinent to the investigation or defense of any claim related to SymboCor's conduct and performance. Consistent with applicable federal, state and local law, the Sheriff will make available to SymboCor such records as are maintained by the Sheriff, hospitals and other outside health care providers involved in the care or treatment of inmates, to the extent the Sheriff has any control over those records, as SymboCor may reasonably request. Any such information provided by the Sheriff to SymboCor that the Sheriff considers confidential shall be kept confidential by SymboCor and shall not, except as may be required by any federal, state or local law, be distributed to any third party without the prior written approval of the Sheriff.

## ARTICLE 6: SECURITY

6.1     General. SymboCor and the Sheriff understand the importance of security services to the safety of the agents, employees and subcontractors of SymboCor as well as for the security of inmates and the Sheriff's staff, consistent with the correctional setting. Accordingly, both the Sheriff and SymboCor will cooperate with each other in addressing security issues. The Sheriff will use reasonable efforts to provide sufficient security to enable SymboCor and its personnel to safely and adequately provide the Services described in this Agreement, however, nothing herein shall be construed to make the Sheriff, its deputies or employees a guarantor of the safety of SymboCor's employees, agents or subcontractors, including their employees.

6.2     Security Override. In the event that SymboCor recommends Services for any inmate or SymboCor recommends that an inmate be sent off-site for medical services, the Sheriff will not interfere or override SymboCor's health care recommendations.

6.3     Security During Transportation Off-Site. The Sheriff will provide security in connection with the transportation of any inmate between the Facilities and any other location for off-site services.

## ARTICLE 7: OFFICE SPACE, EQUIPMENT, INVENTORY AND SUPPLIES

7.1     General. The Sheriff agrees to provide SymboCor with office space and facilities and utilities at the Facilities sufficient to enable SymboCor to perform its Services and obligations pursuant to this Agreement. SymboCor shall provide all equipment at the Facilities to provide the Services pursuant to this Agreement. Sheriff shall be responsible for providing substitute space, if reasonably available and necessary, should SymboCor recommend that the designated Facilities are inadequate for the purposes hereof or that the designated medical Facilities become unsafe for any reason.

*mgm*

7.2        Information Technology.  Sheriff will maintain, and support an information technology infrastructure within the Facilities. SymboCor will provide all computer hardware and software platforms and security required to perform services. This infrastructure will be utilized only by SymboCor's staff to support the provision of Services within the Facilities. Pre-existing Sheriff information technology resources including computers, printers, network accounts, etc. will be discontinued for healthcare staff. In addition, all Sheriff computer equipment will be removed from the work areas of healthcare staff in order for SymboCor IT provided equipment to be installed and utilized during the term of this Agreement.

7.3        Delivery of Possession. The Sheriff will provide to SymboCor, beginning on the date of commencement of this Agreement, possession and control of all supplies, medical equipment, and office equipment in place at the Facilities' health care units which are the Sheriff's property or in the possession of the Sheriff. At the termination of this Agreement, SymboCor will return to the Sheriff possession and control of all medical equipment and office equipment, in working order, reasonable wear and tear excepted, which were in place at the Facilities' health care unit prior to the commencement of services under this Agreement. Any equipment purchased by Sheriff under the Agreement shall be the property of the Sheriff and shall remain on-site at the termination of the Agreement. All supplies purchased by Sheriff for the performance of the Agreement shall be the property of the Sheriff and shall remain on-site at the termination of the Agreement. Any dispute under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

7.4        Equipment. SymboCor will be responsible for the cost of new and/or replacement equipment. SymboCor will be responsible for ongoing repair and maintenance of all medical and office equipment provided and owned by the Sheriff for use by SymboCor under this Agreement. Medical equipment, computers, printers and other office equipment purchased by SymboCor during the term of this Agreement will remain the property of SymboCor upon termination of this Agreement. Any dispute under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

7.5        General Maintenance Services. The Sheriff will provide for each inmate receiving Services at the Facilities certain services including, but not limited to, daily housekeeping services, dietary services, building maintenance services, personal hygiene supplies and services, and linen supplies.

### ARTICLE 8: TERM AND TERMINATION OF AGREEMENT

8.1    Term. This Agreement shall commence at 12:00 a.m. on September 1, 2023. The initial term of this Agreement shall be for three (3) years, ending at 11:59 p.m. on August 31, 2026, with an option to extend for two (2) additional one-year periods, unless either party provides notice of termination under this provision at least ninety (90) days prior to the end of three (year) period or at least ninety (90) days prior to the end of any additional one-year period.

8.2    Termination. Notwithstanding the provisions of Article 8.1 or Article 11.8, this Agreement may be sooner terminated on the first to occur of the following:

A.  Termination for Appropriations. It is understood and agreed that this Agreement will be subject to annual appropriations to the Sheriff by the Jefferson County Commission. If funds are not appropriated by the Jefferson County Commission for this Agreement, then upon exhaustion of such available and approved funding, the Sheriff will be entitled to immediately terminate this agreement without penalty or liability. Recognizing that the such termination under Article 8.2(A) may entail substantial costs to SymboCor, the Sheriff will act in good faith and make every effort to give SymboCor such reasonable advance notice of any potential problem, of which Sheriff is made known by the Jefferson County Commission, with funding or appropriations as to this Agreement. Sheriff agrees to pay for Services rendered and for reimbursements owed up to point of termination under Article 8.2(A).

B.  Termination for Default. The Sheriff shall give notice to SymboCor that SymboCor has materially defaulted in the performance of any of its obligations hereunder and if such default has not have been cured within thirty (30) days (the "Cure Period"), in writing between the Sheriff and SymboCor following the giving of such notice in writing, the Sheriff shall have the right to immediately terminate this Agreement, but such right to terminate shall be deem waived if not exercised within thirty (30) days after the expiration of the Cure Period. Sheriff agrees to pay for services rendered and for reimbursements owed up to point of termination under Article 8.2(B). If this Agreement is terminated under this subsection, Sheriff shall be entitled to execute enforcement of and on the $1,000,000 Performance Bond referenced in the SymboCor Proposal and set forth in more detail in Article 8.5.

C.  Termination With Cause. The Sheriff, in Sheriff's sole and absolute discretion, may terminate this Agreement with Cause immediately under this subsection by providing not less than seven (7) days' prior written notice to SymboCor. For purposes of this Agreement, "Cause" means, with respect to SymboCor: (1) engagement in material gross misconduct related to provision of Services; (2) a material breach of fiduciary duties or material breach of Sheriff's policies and procedures; (3) SymboCor's failure to cure a material breach of the Services within such seven (7) day period as provided above; (4) material breach of the staffing requirements in the Staffing Summary for a period of thirty (30) days, as provided above; (5) dishonesty, fraud, gross negligence or repetitive negligence committed without regard to corrective direction in the course of discharge of Services; (6) SymboCor bankruptcy. Sheriff agrees to pay for Services rendered and for reimbursements owed up to point of termination under Article 8.2(C). If this Agreement is terminated under this subsection, Sheriff shall be entitled to execute enforcement of and on the $1,000,000 Performance Bond referenced in the SymboCor Proposal and set forth in more detail in Article 8.5.

D.  Termination Without Cause. The Sheriff may terminate this Agreement without cause by providing not less than ninety (90) days' prior written notice to SymboCor. SymboCor may terminate this Agreement without cause by providing not less than ninety (90) days' prior written notice to the Sheriff. Notice hereunder shall be provided pursuant to Article 11.3 of this Agreement. Sheriff agrees to pay for Services rendered and for reimbursements owed up to point of termination under Article 8.2(D).

8.3     Responsibility for Inmate Health Care. Upon termination or expiration of this Agreement, all responsibility for providing on-site Services to all inmates will be immediately transferred from SymboCor to the Sheriff or Sheriff's incoming medical provider. SymboCor agrees to provide Services compliant with all applicable Standards and to provides Services, in accordance with thestaffing requirements set forth in the SymboCor proposal, compliant with all applicable federal, state or local laws throughout the Agreement and termination of Agreement, including the time frames following any notice of termination pursuant to Articles 8.2(A)-(D). Any disputes under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

8.4     Payment for Services Performed.  In the event that this Agreement is terminated for any reason, the Sheriff agrees to pay SymboCor for services actually performed through the date of termination. Any disputes under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

8.5     Performance Bond. As set forth in Article 8.2(B) and Article 8.2(C), and in accordance with the SymboCor Proposal, SymboCor shall, prior to August 31, 2023, post a performance bond in the principal amount of One Million Dollars ($1,000,000.00).  This bond shall expire March 1, 2025 as to any claim not asserted against such bond as of such date. The Sheriff may recover on such bond only to the extent that Sheriff, despite his reasonable, good faith efforts to minimize the cost of replacement coverage, incurs costs to cover the gap in Services coverage (the "gap" shall be defined as the amount by which the replacement coverage exceeds the amount that would have been paid to SymboCor) for the period ending not later than March 1, 2025. Further, the Sheriff may not execute on the bond if the termination is pursuant to paragraph 8.2 C (4) and, despite the failure to meet the said Staffing Summary requirements within such 30 day period, SymboCor was able to and did staff sufficiently to render the Services.  Any and all costs and expenses incurred in covering the gap in Services coverage shall also include without limitation, attorneys' fees, expenses and costs, and shall be borne by SymboCor in Sheriff's recovery pursuant to the performance bond. Any disputes under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

### ARTICLE 9: COMPENSATION

9.1     Base Compensation.  Sheriff will pay SymboCor monthly compensation for Services, based on an ADP of 1,100 for the initial three-year term and, if renewed, the optional two one-year renewal extensions, as follows:

Year 1: $5,460,000.00

Year 2: $5,678,400.00

Year 3: $5,905,536.00

9.2           ADP Fluctuation. Shou Should the combined ADP threshold of 1,100 in the Jefferson County Facilities increase or decrease within the Facilities over a ninety (90) day period by more than 20% on average, the parties agree to meet and confer to negotiate any necessary contractual modifications.   Any disputes under this provision shall be subject to dispute resolution

pursuant to Article 11.8 of this Agreement.

9.3        Onsite Dialysis Services. Dialysis-services will be provided by SymboCor for Inmates. SymboCor will invoice Sheriff for the cost of supplies and medications used for dialysis sessions will be passed through at SymboCor's cost as set forth in the SymboCor Proposal and this Agreement.

9.4        Invoicing. SymboCor shall invoice Sheriff by the first day of the month for which Services will be rendered and for reiumbursements from the previous month in which Services were rendered, and Sheriff agrees to pay SymboCor on or before the last day of the month in which Services are rendered for the Services and for any reiumbursements from the previous month in which Services were rendered. In the event this Agreement should terminate on a date other than the end of a calendar month, compensation to SymboCor will be pro-rated accordingly for the shortened month in which Services are rendered. Invoices shall be submitted to:

> The Jefferson County Sheriff's Office
> *ATTN*: Melissa Allen
> 2200 Rev. Abraham Woods, Jr. Blvd.
> Birmingham, Alabama 35203

9.5        Changes in the Law. If any statute, rule or regulation is passed, or any order issued, or any statute or guideline adopted or interpretation made, or additional Facilities opened, or certain Facilities are closed, that materially changes the scope of Services, resulting in the increase to the cost to SymboCor of providing Services hereunder, SymboCor and the Sheriff agree to negotiate additional the compensation to be paid by the Sheriff to SymboCor as a result of such changes Prior to negotiation, SymboCor and Sheriff agree to provide the other party information sufficient to evaluate the scope and necessity of and any increase in cost of Services. Any disputes under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

## ARTICLE 10: LIABILITY AND RISK MANAGEMENT

10.1        Insurance. SymboCor shall purchase and maintain in force at all times during the term of this Agreement insurance with limits not less than indicated below. The Sheriff is to be named as an additional insured in the policies, except for Workers Compensation Insurance, for all policies. The parties hereby acknowledge that the stated annual coverage limits noted herein by SymboCor may be shared among SymboCor's other clients on an annual basis. Certificates of the coverage outlined below shall be provided to Sheriff evidencing the terms of the insurance coverage and policy limits. Notwithstanding the forgoing, under no circumstances should Sheriff's coverage under the insurance policies be diluted in any way and Sheriff shall receive all benefits should the insurance policies increase in coverage.

A. Commercial General Liability Insurance: The minimum acceptable limits of claims-made liability insurance to be provided by such general liability insurance shall be as follows:
- Bodily Injury/Property Damage Insurance with limits of $1,000,000 for each occurrence

*mgm*

- $5,000,000 annual aggregate

B. Professional Liability Insurance: The minimum acceptable limits of claims-made liability insurance to be provided by such professional liability insurance shall be as follows:
   - $1,000,000 per medical incident
   - $5,000,000 annual aggregate

C. Automobile Liability Insurance:
   - Bodily Injury/Property Damage
     Per Occurrence: $1,000,000

D. Umbrella (excess liability policy) or additional limits:
   - $5,000,000 per occurrence with an annual aggregate of $5,000,000

E. Workers Compensation Insurance (complying with the statutory minimum requirements):
   - Employer's Liability Coverage Limit: $1,000,000

10.2    Hold Harmless and Indemnify. To the fullest extent permitted by law, SymboCor agrees to indemnify, defend and hold harmless the Sheriff, its agents, officers and employees, from and against all loss or expense, including but not limited to reasonable attorney's fees, for bodily injury, including death, and property loss or damage arising out of any wrongful, intentional malicious, willful, wanton or deliberately indifferent act, negligence, or omission of SymboCor, its agents, employees or subcontractors. SymboCor will have no obligation to indemnify, defend and hold harmless the Sheriff, its agents, officers and employees for any injury or damage caused by or resulting from the wrongful, intentional, malicious, willful, wanton or deliberately indifferent act solely cause by the negligence, or omission of the Sheriff, its agents, employees or subcontractors. SymboCor's obligations pursuant to this provision will not apply to any claim, liability, cost or expense incurred in connection with treatment of any Inmate's injury if such treatment occurred prior to the Inmate's custody by the Sheriff or at any time the Inmate was outside the Sheriff's custody. SymboCor's obligations shall apply at all times where Inmate in is Sheriff's possession pursuant to the Agreement. SymboCor's obligations pursuant to this provision will not apply to any claim, liability, cost or expense solely caused by the wrongful, intentional, malicious, willful, wanton or deliberately indifferent acts solely caused by the negligence, or omissions of any of the Sheriff officers, agents, or employees which prevent an Inmate from receiving Services as directed by SymboCor. The Sheriff shall promptly notify SymboCor of any incident, accident, claim or lawsuit of which the Sheriff becomes aware that does or may potentially involve SymboCor, and shall fully cooperate in the defense of such claim. SymboCor may retain sole control of the defense while the action is pending should it so choose, so long as it does not interfere with any defense or representation provided by an insurance company and does not interfere with any defense of representation of the Sheriff. SymboCor further agrees to indemnify, defend and hold harmless the Sheriff, its agents, officers and employees from and against all claims or liability for compensation arising out of injuries sustained by any employee or agent or subcontractor or subcontractor's employee of SymboCor. This provision shall survive the termination or expiration of this Agreement.

10.3    Indemnification. SymboCor shall be responsible for all damage to property, injury to persons, and loss, expense, inconvenience, and delay which may be caused by, or result from, the conduct of Services, or from any wrongful, intentional, malicious, willful, wanton or deliberately indifferent act solely caused by the negligence, or omission of SymboCor, its subcontractors, agents, or employees. SymboCor agrees to indemnify, hold harmless and defend the Sheriff, and its officers, elected officials, agents and employees from and against all claims and actions, and all expenses incidental to the investigation and defense thereof, arising out of or based upon damage or injuries to persons or property caused by the wrongful, intentional, malicious, willful, wanton or deliberately indifferent act solely caused by the negligence, or omission of SymboCor or SymboCor's employees, subcontractors, or agents. Provided, however, that SymboCor shall have no obligation to indemnify the Sheriff, the Sheriff, and/or Sheriff agencies, including any employees, agents or contractors, for any losses, damages and/or injury arising out of or resulting from a wrongful, intentional, malicious, willful, wanton or deliberately indifferent act solely caused by the negligence, or omission  attributable solely to the Sheriff or its agents, or for any claim arising solely out of: (1) the Sheriff, its employees or agents affirmatively preventing an Inmate from receiving Services ordered by SymboCor or its agents; or (2) any failure by the Sheriff, its employees or agents to promptly present an Inmate to SymboCor for Services in any situation where it is actually known by a person with no medical training that Services are needed to be provided by SymboCor (i.e. after a physical altercation between persons and an inmate).

## ARTICLE 11: MISCELLANEOUS

11.1    Independent Contractor Status. The parties acknowledge that SymboCor is an independent contractor. Nothing in this Agreement is intended, nor shall be construed to create, an agency relationship, partnership relationship, an employer/employee relationship, or a joint venture relationship among the parties. SymboCor does not have the power to bind the Sheriff or to assume or create any obligation or responsibility on the Sheriffs behalf or in the Sheriff's name, except as otherwise explicitly detailed in this agreement. SymboCor shall not represent to any person or entity that SymboCor has such power or authority. SymboCor will not act as an agent nor will SymboCor be deemed to be an employee of the Sheriff for the purposes of any employee benefit program.

11.2    Advice of Counsel. Both Sheriff and SymboCor have had the opportunity to seek counsel, legal or otherwise, prior to entering into this Agreement. Each party mutually agrees they are entering into this agreement under their own volition and understands and agree that this Agreement will be construed as if drafted by both parties and not by one party solely.

11.3    Authority. The persons signing below represent that they have the right and authority to execute this Agreement for their respective entities and no further approvals are necessary to create a binding agreement.

11.4    Assignment and Subcontracting. Except as provided in Article 2.7, SymboCor shall not assign this Agreement, or any of its rights or obligations under this Agreement, without the express written consent of the Sheriff. Sheriff reserves the right to withhold and not give consent to any assignment, except as provided in Article 2.7, for any reason whatsoever. Any assignment in violation of this Article will be null and void. Any such assignment or subcontract

shall include all of the obligations contained in this Agreement. The parties hereby agree that various independent contractors serving as medical providers will be utilized in carrying out the Services and obligations contained in this Agreement No valid assignment shall release SymboCor from the Services and obligations under the Agreement, as may be amended by mutual written consent of the parties, without specific provisions agreeing to release SymboCor of the Services and obligations under the Agreement, with written consent by Sheriff to release SymboCor of the Services and obligations under this Agreement. Any disputes under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

11.5        Unless otherwise provided herein, all notices or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally in hand or sent by certified mail, return receipt requested, postage prepaid, and addressed to the appropriate party at the following address or to any other person at any other address as may be designated in writing by the parties:

| | |
|---|---|
| SymboCor: | Michael G. Molyneux<br>Manager<br>3765 A Government Blvd<br>Mobile, AL 36693-4307 |
| With a copy to: | Davis, Davis & Associates, P.C.<br>*ATTN*: Richard E. Davis<br>Post Office Box 2925<br>Daphne, Alabama 36526 |
| Sheriff: | Jefferson County Sherrif's Office<br>*ATTN*: Mark L. Pettway, Sherrif<br>2200 Reverend Abraham Woods Jr. Blvd.<br>Birmingham, Alabama 35203 |
| With a copy to: | Jefferson County Sherrif's Office<br>*ATTN*: Melissa Allen<br>2200 Reverend Abraham Woods Jr. Blvd.<br>Birmingham, Alabama 35203 |
| With a copy to: | Gordon, Dana & Gilmore, L.L.C.<br>*ATTN*: Jonathan D. Gilbert<br>600 Univerity Park Place, Ste. 100<br>Birmingham, Alabama 35206 |

Notices shall be effective upon receipt.

11.6    Governing Law and Venue. The parties agree that this contract is made and entered into in Jefferson County, Alabama, and that all Services, materials and equipment to be rendered pursuant to said Agreement are to be delivered in Jefferson County, Alabama. The interpretation and enforcement of this Agreement will be governed by the laws of the State of Alabama, without giving effect to the conflict of laws rules thereof. The parties hereto consent to the jurisdiction of any state or

*mgm*

federal court holding in either Birmingham or Bessemer, Jefferson County, Alabama or in the U.S. District Court for the Alabama Northern District ("Venue").

The parties, to the extent permitted by applicable law, waive any objection based on Venue or *forum non conveniens* with respect to any action instituted in any such court so identified and agree that such court shall be the exclusive Venue for any action under this Agreement, or concerning or relating to the relationship between the Sheriff and SymboCor. SymboCor acknowledges and agrees after consultation with its attorney that all if not substantially all of the activities flowing to and from the Agreement are in the Birmingham, Bessemer, and Jefferson County Alabama Area; the Sheriff is located in this designated Venue; SymboCor is performing all, if not substantially all of its Services pursuant to this Agreement with the Sheriff within this designated Venue; the overwhelming persons to be witnesses work in the Venue selected and/or Jive in the Venue; the anticipated 11exus and connection of the material parties and witnesses should be easily available and not be costly to the parties and witnesses in the Venue; any burden or hardship is overcome and weighted in favor of the selection of this Venue; the parties have agreed upon and the parties agree in contracting for the selected Venue they have considered the alternatives and acknowledge and agree that the "interest of justice" as cited in Section 6-3-21.1 of the Code of Alabama; and is not and will not be a hardship on either the Sheriff or SymboCor.

11.7   Entire Agreement.  This Agreement represents the entire understaind of the parties with respect to the subject matter hereof, supercedes and cancels all prior agreements, understandings, and arrangements or representtions between the parties with respect to such subject matter, otherwise not inforporated into this Agreement.

11.8   Dispute Resolution/ Arbitration. Subject to any amendment under Article 11.9 of this Agreement, in the event of any claim, dispute or other matter arising out of or relating to this Agreement, the Parties will promptly attempt to settle such dispute through consultation and negotiation in good faith and in a spirit of mutual cooperation. If agreement is reached concerning the resolution of such dispute, then such agreement shall be final, conclusive and binding on the Parties. If, on or before the thirtieth (30th) day after written notice of such dispute is given by one Party to the other Party, such dispute has not been resolved to the satisfaction of all the Parties, such dispute shall be settled by an arbitration proceeding by a mutually-agreed- upon arbitrator. In the event that the parties hereto cannot within ten (10) days of the request for arbitration agree on one arbiter, then the Sheriff shall select one attorney and SymboCor shall select another attorney and these two attorneys shall agree on a third attorney as arbiter and thus a three (3) person panel of arbiters being attomeys licensed to practice in Alabama shall constitute the panel. The Parties shall provide the arbiter(s) with such information as may be reasonably requested in connection with the arbitration of such dispute, and shall otherwise cooperate with each other and such arbiter(s) in good faith and with the goal of resolving such dispute as promptly as reasonably practicable. The arbiter(s) shall issue a decision and award with respect to the dispute as promptly as reasonably practicable using Alabama law and in conformity with the Laws of the State of AJabama. Further the Arbiter(s) shall use the Rules of Civil Procedure enacted to regulate and govern the civil judicial proceedings in the State of Alabama which would allow full and complete discovery pursuant thereto and fashion an award based on the strict application of the laws of the State of Alabama The American Arbitration Association (AAA) will not be used in any of the arbitration proceedings. The arbitrator's decision should be with good faith and award with respect to the dispute referred to shall be final and binding on the Parties and may be entered in any court with jurisdiction, and the parties hereto shall abide by such decision and award. The cost of the arbitration proceeding and any proceeding in court to confinn or to vacate any arbitration award,

*mgm*

as applicable (including, without limitation, attorneys' fees and costs), shall be borne by the unsuccessful Party (if any) and shall be awarded as part of the arbiters' award; provided, however, that if the arbiters do not find one Party to be unsuccessful then the cost of the arbitral proceeding shall be paid equally by the Parties.

11.9    Amendment. This Agreement may only be amended or revised if approved by authorized parties, only in writing, and signed by all parties to this Agreement.

11.10    Headings. The headings contained in this Agreement are for reference purposes only and will not affect in any way the meaning or interpretation of this Agreement.

11.11    Waiver of Breach. The waiver by any party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof. Any waiver of the provisions of this Agreement or of a party's rights or remedies under this Agreement must be in writing to be effective. Failure, neglect or delay by a party to enforce the provisions hereof of its rights or remedies at any time, will not be construed as a waiver or such party's rights or remedies hereunder and will not in any way affect the validity of the agreement or prejudice such party's right to take subsequent action.

11.12    Other Contracts and Third-Party Beneficiaries. The parties acknowledge that SymboCor is not bound by or aware of any other existing contracts to which either the Sheriff or SymboCor is a party and which relate to the provision Services to the Inmates at the Facilities. The parties agree that they have not entered into this Agreement for the benefit of any third person or persons, and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of any non-party who might otherwise claim to be deemed to constitute a third-party beneficiary hereof. Without limiting the foregoing, the parties expressly disavow their mutual intention that any Inmate is a third party beneficiary of this Agreement.

11.13    Severability. In the event any provision of this Agreement, or any portion thereof, is held to be invalid, unlawful or unenforceable for any reason, such provision shall be enforced to the maximum extent permissible so as to effect the intent of the parties, and the unenforceability thereof shall not affect the remainder of the Agreement, which shall remain in full force and effect. Sheriff and SymboCor will negotiate in good faith an enforceable substitute provision for any such invalid, unlawful or enforceable provision for such invalid provision that most nearly achieves the same intent and economic effect. Any disputes under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

11.14    Force Majeure. Either Party shall be excused from performance of its obligation hereunder upon the occurrence of of a Force Majeure event with respect to such Party, of a Force Majeure event."Force Majeure Event" shall mean the occurrence of any of the following events or conditions, provided that such event or condition either: makes it reasonably impractical for either Party to perform its obligations under this Agreement due to an event not within such Party's reasonable control (i) frustrates the underlying purpose of this Agreement, or (ii)makes it economically impracticable for either Party to perform its obligations under this Agreement, including: acts of god, wars or war-like action (whether actual or threatened and whether conventional or other, including, but not limited to, chemical or biological wars or war-like action); sabotage, terrorism or threats of

sabotage or terrorism; riots or uprisings; states of emergencies, explosions, epidemics, weather or natural disasters, including, but not limited to, fires, floods, viruses, droughts, hurricanes, tornados, storms or earthquakes; and any governmental order or action (civil or military); provided, however, that none of the foregoing enumerated events or conditions is within the reasonable control of such Party.

Without limiting the foregoing, SymboCor may cease to provide Services during any period of time or under such circumstances that it deems the provision of such Services to be dangerous or to otherwise jeopardize the health or safety of SymboCor's employees or contractors the thirty (30) day period SymboCor performs Services following notice of termination under this Article.

11.15    Effect of This Agreement. This Agreement, including the attachments, and documents previously incorporated herein as Exhibits, constitutes the complete understanding between the parties with respect to the terms and conditions set forth herein and supersede all previous written or oral agreements and representations. This Agreement shall be modified only in a writing that expressly references this Agreement and is executed by all of the parties hereto.

11.16    Further Acts. Sheriff and SymboCor agree to perform any further acts and execute and deliver any further documents that may be deemed reasonably necessary by the Sheriff and SymboCor to carry out the provisions of the agreement, so long as the further actions and execution and delivery of documents results in no additional costs to either party and subject to the approval of each parties' respective legal counsel. Any disputes under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

11.17    Survival. The provisions of this Agreement pertaining to the obligation to pay for Services rendered pursuant to this Agreement shall survive the termination ofthls Agreement.

11.18    Use of Name. It is understood and agreed by SymboCor that SymboCor's name may appear in certain documents disclosed by the Sheriff, including those required by applicable law and in other regulatory and administrative filing in the ordinary course of Sheriff's operations.

11.19    No Grant of Rights. Each of the parties understands and agrees that no grant or license of a party's rights in any patent, trademark, trade secret, copyright and/or other intellectual property right is made hereby, expressly or by implication.

11.20    Enforcement. In the event any party incurs legal expenses or costs to enforce the terms of this Agreement, the cost of the legal expenses and any costs awarded in arbitration or any proceeding in court, as applicable (including, without limitation, attorneys' fees and costs), shall be borne by the unsuccessful Party (if any) and shall be awarded accordingly; provided, however, that if the arbiters or any proceeding in court do not find one Party to be unsuccessful then the legal expenses and costs of the proceedings shall be the sole responsibility of each Party.

11.21    Compliance with Laws. The parties hereto expressly acknowledge that it has been, and continues to be, their intent to comply fully with all federal, state and local laws, Court Orders, rules, and regulations. In the event of any legislative or regulatory

change or determination, whether federal or state, that has or would have a significant adverse impact on either party thereto in connection with the performance of its obligations, or should any party be deemed for any reason to be in violation of any statute or regulation arising from this Agreement, this Agreement shall be renegotiated to comply with the applicable provisions of then current law.

      11.22            <u>Equal Opportunity Employment</u>. SymboCor shall provide equal opportunity employment opportunities to all employees and applicants for employment without regard to race, color, religion, sex, national origin, disability, age or genetics. SymboCor shall comply with all applicable state and local laws governing discrimination in employment in every location in which SymboCor has facilities and employees. This equal opportunity employment policy applies to all terms and conditions of employment including, but not limited to, recruitment, hiring, placement, promotion, termination, layoff, recall, transfer, leaves of absence, benefit plans, training and all forms of compensation.

      11.23             <u>Confidentiality</u>. It is understood that in the course of the engagement established under this Agreement, each party may learn of or obtain copies of confidential or proprietary software, systems, manuals, documents, protocols, procedures, or other materials developed by or belonging to the other party, and not generally available to the public, except to the extent Sheriff is required to disclose certain documents pursuant to Alabama's Open Records Act, pursuant to Ala. Code § 36-12-40 (hereinafter referred to as "Confidential Information"). All Confidential Information shall be and remain the property of the party originally having ownership thereof. Neither party will, without the express written consent of the other party, use the Confidential Information of the other party, except as expressly contemplated by this Agreement, and the receiving party shall cease all use of the other party's Confidential Information upon the termination or expiration of this Agreement. Except as required by law or legal process, each party shall maintain the confidentiality of the Confidential Information provided hereunder, and shall not disclose such information to third parties. This provision shall survive the termination or expiration of this Agreement. Any disputes under this provision shall be subject to dispute resolution pursuant to Article 11.8 of this Agreement.

      11.24             <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which will be an original and all of which will constitute one agreement.

      IN WITNESS WHEREOF, the parties have executed this Agreement in their official capacities with legal authority to do so.

*mgm*

**SYMBOCOR, LLC**

_____
Michael G. Molyneux
Managing Member

July 15, 2023
_____
          Date

**SHERIFF**

_____
Mark L. Pettway
Sheriff

_____7.27.23_____
          Date

# PRICING

Include all applicable charges to complete the project as specified.

**Response:**
Compensation for Services: Sheriff will pay SymboCor monthly compensation for Services, based on an ADP of 1,100 for the initial three-year term as follows:

Year 1: $4,750,000

Year 2: $4,940,000

Year 3: $5,137,600

ADP Fluctuation: Should the combined ADP threshold of l,100 in the Jefferson County Facilities increase within the Facilities over a ninety (90) day period by more than 20% on average, the compensation provided for hereunder shall increase at the end of such ninety (90) day period by the same percentage as the increase in ADP.

On-site Dialysis Services: Dialysis services will be provided by SymboCor for Inmates. SymboCor will invoice Sheriff for the cost of supplies and medications used for dialysis sessions will be passed through at SymboCor's cost.

Laboratory Services: CLIA waived labs and those listed in Exhibit B will be passed through at SymboCor's cost for reimbursement by the Sheriff. Any lab not on Exhibit B requires approval from the Medical Director.

Brand and Specialty Medications: Brand name medications and specialty medications such as HIV/AIDS medications, TB related medications, blood factor medications, and Hepatitis C medications shall be covered under the current program passed through to Sheriff at SymboCor's cost.

On-site Dialysis Services: Dialysis services will be provided by SymboCor for Inmates at SymboCor's sole expense. The cost of supplies and medications used for dialysis sessions will be passed through at SymboCor's cost.

Hospitalization and Off-site Claims, including x-ray services, will be passed through at SymboCor's cost.

## THIRD ADDENDUM TO THE HEALTH SERVICES AGREEMENT

This Third Addendum (the "Third Addendum") is an addendum to the Health Services Agreement ("Agreement")[1] made by and between Mark L. Pettway, in his official capacity as Sheriff of Jefferson County, Alabama (hereinafter referred to as "Sheriff") and SymboCor, LLC, an Alabama limited liability company (hereinafter referred to as "SymboCor"), that was made effective as of 12:00 a.m. on September 1, 2023.

### RECITALS

WHEREAS, SymboCor has received notice of substantial changes in its professional liability insurance coverage and the cost thereof;

WHEREAS, since the inception of this Agreement, SymboCor's services have achieved substantial cost savings and reduced deputy manhours used for offsite medical transport and custody; and

WHEREAS, given the aforesaid benefits received by Sheriff as a result of such services, Sheriff desires to facilitate the continuation of such services and to minimize the impact of the changes in the said insurance costs.

WHEREAS, Sheriff and SymboCor agree to modify Section 9.1 of the original Agreement by deleting Paragraph 9.1 of the Original Agreement and replacing it as set forth below in this Third Addendum.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth, the parties hereto, intending to be legally bound hereby, agree as follows:

The Agreement, as amended, is hereby supplemented by this Third Addendum as follows:

9.1    Base Compensation.  Sheriff will pay SymboCor monthly compensation for Services, based on an ADP of 1,100 for the initial three-year term and, if renewed, the optional two one-year renewal extensions, as follows:

Year 1: $5,460,000.00

Year 2: $5,678,400.00

Year 3: $6,905,536.00

All the other terms and conditions of the Agreement shall remain the same effective as of the date of signing below.

**{signature page following}**

---

[1] The parties also executed that certain First Addendum dated April 4, 2024 and the Second Addendum dated November 21, 2024, and references herein to "Agreement" shall include the original Agreement, the First Addendum, and Second Addendum collectively.

Page 1 of 2

**SYMBOCOR, LLC**

*Michael G Molyneux*

Michael G. Molyneux
Managing Member

9/16/2025
Date

**SHERIFF**

Mark L. Pettway
Sheriff

9.16.2025
Date